DISTRICT COURT OF THE UNITED STATES
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10-cv-203-RLV
(5:06-cr-63-RLV-DCK-1)

| | |
|---|---|
| SOUVIRA SIMALAYVONG, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | **ORDER** |

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), and on Respondent's Motion to Dismiss Petitioner's Motion to Vacate, (Doc. No. 8).

**I. BACKGROUND**

Petitioner Souvira Simalayvong was indicted by the Grand Jury for the Western District of North Carolina on December 20, 2006, and charged with conspiracy to possess with intent to distribute at least 50 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846; two counts of possession with intent to distribute at least 50 grams of methamphetamine and aiding and abetting the same, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and using and carrying a firearm during and in relation to a drug-trafficking offense or possessing a firearm in furtherance of such an offense, in violation of 18 U.S.C. § 924(c)(1). (Case No. 5:06-cr-63, Doc. No. 1: Indictment). On November 5, 2007, Petitioner entered a straight-up plea of guilty to the drug-trafficking offenses. Beginning the next day, the remaining offense charged in the indictment, the § 924(c) firearm offense, was tried before a jury.

1

According to the evidence presented at Petitioner's trial that is relevant to Petitioner's claim here, beginning in early October 2006, a confidential informant working with Immigration and Customs Enforcement began making controlled buys of methamphetamine from Petitioner's co-defendant Ricky Travis.  (Case No. 5:06-cr-63, Doc. No. 76 at 61-64; 69-70; Doc. No. 77 at 12-15; 46-48: Trial Tr.).  Mr. Travis was eventually arrested and agreed to cooperate with law enforcement officials by contacting his supplier, later identified as Petitioner.  (Id., Doc. No. 76 at 73; 80).  On October 16, 2006, after Mr. Travis sold the methamphetamine to the confidential informant, Mr. Travis contacted Petitioner to tell him that he had the money from the purchase but that his car had been broken down.  (Id., Doc. No. 76 at 74; 148; Doc. No. 77 at 51).

Petitioner drove to the parking lot where Mr. Travis was parked.  Mr. Travis approached Petitioner's passenger-side door and spoke briefly with Petitioner before placing the package with the buy money into Petitioner's car.  (Id., Doc. No. 76 at 78; 87; Doc. No. 77 at 24).  Mr. Travis then walked back to his car, closed the hood of the car, and signaled to the law enforcement officers conducting visual and audio surveillance of the encounter that the money had been delivered.  (Id., Doc. No. 76 at 78; Doc. No. 77 at 24; 31).  Mr. Travis then got into Petitioner's car.  Petitioner began driving away when officers activated their blue lights and pulled in front of Petitioner's car.  (Id., Doc. No. 76 at 79).  Rather than stopping, Petitioner rammed the officers' car but was then arrested.  (Id., Doc. No. 76 at 15; 79; 105).

Following Petitioner's arrest, officers searched the car and located a loaded semiautomatic, Taurus 9-millimeter handgun facing down in the center console and an operation manual for the handgun in the glove compartment.  (Id., Doc. No. 76 at 81; 85-87; 106; Doc. No. 77 at 171; 176).  Petitioner, who resided with his parents at the time of his arrest, cooperated with officers following his arrest by consenting to their search of his bedroom.  (Id., Doc. No. 76

at 17; 53). Officers arrived at Petitioner's home at approximately 12:50 a.m. on October 17, 2006, and were escorted by Petitioner to his bedroom. (Id., Doc. No. 76 at 18). In the bedroom, officers located two plastic baggies inside of a computer bag in the closet, one of which contained nearly two ounces of methamphetamine; a shoe box containing a digital scale, also in the closet; a magazine for a 9-millimeter handgun containing eight 9-millimeter bullets, found on top of a table in Petitioner's bedroom and determined to be capable of fitting the Taurus handgun found in Petitioner's automobile; a box containing 22 9-millimeter bullets with a capacity of 50 such bullets, found in Petitioner's closet, which bullets were compatible with the Taurus handgun; a plastic bag with nine 9-millimeter bullets also capable of fitting into the Taurus handgun found in Petitioner's automobile; and a key chain or clip and a tool bearing the brand name of Taurus, found on top of the box of ammunition in the closet. (Id., Doc. No. 76 at 26; 29-31; 34-39; Doc. No. 77 at 59-60; 69-70). According to law enforcement officials who conducted the search, Petitioner was present during their search and seizure of the items noted above, but at no time did Petitioner inform officers that he did not own certain of the items, in particular the ammunition or the magazine. (Id., Doc. No. 76 at 51; Doc. No. 77 at 60-61). Likewise, officers were not notified by Petitioner's brother or anyone else that the brother claimed ownership of the firearms-related evidence. (Id., Doc. No. 76 at 53-54; Doc. No. 77 at 64).

Following the presentation of the Government's case, Petitioner presented the testimony of his brother, Southatsa Simalayvong. (Doc. No. 77 at 83). Petitioner's brother testified that he was the owner of the Taurus handgun seized from Petitioner's vehicle on October 16, as well as the magazine and ammunition seized from Petitioner's bedroom. (Id. at 85-87; 110-11). According to Petitioner's brother, he owned numerous firearms and went target shooting

3

regularly. (Id. at 89; 94). Petitioner's brother testified that he regularly carried the Taurus handgun in his car, transporting it in the center console, pointed down. (Id. at 95-96). Petitioner's brother testified further that, on the night of October 13, 2006, several days before his brother's arrest, he and Petitioner went to a club, traveling in Petitioner's car, and the brother placed the Taurus handgun in the center console of the Toyota Camry automobile. (Id. at 95-98). Petitioner's brother testified that he left the firearm in the Camry when they returned from the club and did not retrieve it before Petitioner's arrest on October 16. (Id. at 101; 103).

Petitioner's brother testified that he purchased the magazine found in Petitioner's bedroom as an extra magazine for the Taurus handgun and had it delivered to his mother's house, but that it did not function properly. (Id. at 86-87). According to Petitioner's brother, the bedroom in which officers found the magazine and other firearms-related evidence was not always used as a bedroom, and the closet in the bedroom was used by several members of the family for storage. (Id. at 104-05; 108-09).

On cross-examination, Petitioner's brother acknowledged that he had never shot the Taurus firearm at the shooting club he frequented, even though he also testified that the case for the Taurus firearm was at Petitioner's house because he "carr[ied] that case shooting." (Id. at 132; 145). Petitioner's brother also testified on cross-examination that the manual for the firearm "should be in [a] box" in his brother's room, rather than in the automobile, and he also denied putting either bullets or Taurus tools in a plastic bag as found in Petitioner's bedroom. (Id. at 150; 158-59).

At the conclusion of the trial, the jury acquitted Petitioner of the firearm charge. (Case No. Case No. 5:06-cr-63, Doc. No. 40: Jury Verdict). On March 31, 2008, the Probation Office submitted a Presentence Report ("PSR") in preparation for Petitioner's sentencing hearing. (Id.,

4

Doc. No. 49: PSR). In the PSR, the probation officer began with a base offense level of 32 based on Petitioner's responsibility for over 129 grams of a methamphetamine mixture and over 88 grams of actual methamphetamine. (Id. at 5). The probation officer then recommended a two-level enhancement for possession of a dangerous weapon during at least one of the drug trafficking offenses, and a three-level reduction for acceptance of responsibility, yielding a total offense level of 31. (Id. at 6). Based on a total offense level of 31 and a criminal history category of I, the probation officer calculated an applicable Sentencing Guidelines range of imprisonment of between 108 and 135 months. (Id. at 10). This Court conducted Petitioner's sentencing hearing on August 5, 2008. During the hearing, Petitioner objected to the two-level firearm enhancement, although he did not offer argument. (Case No. 5:06-cr-63, Doc. No. 78 at 3: Sentencing Hrg. Tr.).

Government counsel acknowledged at sentencing that Petitioner had been acquitted of the § 924(c) charge, but counsel noted that ammunition fitting the firearm in Petitioner's car was found in Petitioner's bedroom. Counsel noted that, while the jury may not have found all of the elements necessary for the § 924(c) offense beyond a reasonable doubt, the Court could nevertheless find possession of the firearm by a preponderance of the evidence for Sentencing Guidelines application purposes. (Id. at 4-6). After hearing this argument, the Court overruled Petitioner's objection to the enhancement, "finding that the preponderance of the evidence establishes that defendant possessed the weapon knowingly," warranting application of the enhancement pursuant to U.S.S.G. § 2D1.1(b)(1). (Id. at 6). The Court then sentenced Petitioner to 108 months of imprisonment, at the low end of the applicable Sentencing Guidelines range of imprisonment. (Id. at 10).

Petitioner appealed his sentence, arguing that this Court erred in enhancing his offense

5

level based on his having possessed a firearm during the drug-trafficking offense. The Fourth Circuit Court of Appeals affirmed this Court's judgment on January 12, 2010, holding that this Court did not clearly err in finding that Petitioner possessed the firearm at issue in connection with his drug dealing. United States v. Simalayvong, 360 F. App'x 498 (4th Cir. 2010). Petitioner now moves to vacate his sentence, arguing that trial counsel provided constitutionally deficient representation in failing to present evidence in support of his objection to the two-level firearm enhancement and that appellate counsel improperly failed to argue ineffective assistance of trial counsel on direct appeal for the same reason.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter and the parties' briefs on Respondent's motion to dismiss, the Court finds that the motion to vacate can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

United States Sentencing Guideline § 2D1.1(b) provides that if a dangerous weapon, including a firearm, was possessed during the course of a drug-trafficking offense, the defendant's offense level should be increased by two levels. U.S.S.G. § 2D1.1(b). Application Note 3(A) to § 2D1.1 provides that this "enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Id. § 2D1.1 cmt. n.3(A) (emphasis added). The application of this enhancement is appropriate as long as the sentencing court finds the requisite facts supporting its application by a preponderance of the evidence. See United States v. Washington, 629 F.3d 403, 410 (4th Cir. 2011) (affirming armed-career-criminal enhancement as supported by preponderance of the evidence and declining the defendant's invitation to apply a higher evidentiary burden in Armed Career Criminal Act cases).

Here, although Petitioner's trial counsel objected to the application of the two-level enhancement, Petitioner asserts that counsel provided constitutionally deficient representation by failing to present evidence in support of that objection and by failing to require that the

7

Government present evidence in support of the enhancement. Specifically, according to Petitioner, he would have testified that the gun did not belong to him and that he did not ever possess firearms during the course of his drug transactions and that, on the date of his arrest, he was not aware that Mr. Travis had engaged in a drug deal. Petitioner asserts further that Mr. Travis would have corroborated his testimony that he did not carry firearms during his drug-dealing activities.

Petitioner's ineffective-assistance-of-counsel claim fails for several reasons. First, with respect to counsel's failure to insist that the Government present its evidence in support of the enhancement during the sentencing hearing, Petitioner cannot show either deficient representation or prejudice because the Government had already presented its evidence in support of the enhancement during the trial on the charge that Petitioner possessed a firearm during a drug-trafficking offense. This Court had already heard evidence concerning Petitioner's constructive possession of the firearm that was seized from the center console of his automobile following his arrest, the seizure from the same automobile's glove compartment of the manual for operating the firearm, and the seizure from Petitioner's bedroom of ammunition and a magazine fitting the firearm. During his trial, Petitioner was able to confront each of the witnesses who testified to these events and seizures, and there was simply nothing to be gained by requiring that the Government present its evidence again. Indeed, Respondent contends, and the Court agrees, that insisting on the presentation of this evidence again may have been more likely to have harmed, rather than helped, Petitioner.

Next, with respect to Petitioner's insistence that, even though he did not testify at trial, he would have testified in support of the objection at his sentencing hearing, Petitioner has not shown a reasonable probability that, even if he had testified, this Court would have found it

"clearly improbable" that the firearm found in Petitioner's car was related to the drug-trafficking offenses he admitted to having committed on the same day, particularly where Petitioner had obtained his portion of the drug-deal proceeds while sitting in his car just before his arrest. Although Petitioner also states that he would have testified that he did not know the gun was in the car, the evidence that the gun belonged to Petitioner was overwhelming, notwithstanding the jury's finding that he was not guilty of the § 924(c) offense under a beyond-a-reasonable-doubt burden of proof. Not only was the gun in the center console immediately beside Petitioner, but the operator's manual for the gun was in his glove compartment–a fact Petitioner's brother was unable to explain–and ammunition, a firearm tool, and a magazine compatible with the firearm were in Petitioner's bedroom, not only in the closet Petitioner's brother insisted was jointly used, but also on top of a table in the bedroom. In light of the strength of this evidence and the relatively low threshold the Government had to meet to prove that it was not clearly improbable that the firearm was connected to the drug-trafficking offenses, Petitioner has not shown a reasonable probability that, even if he had gotten on the stand and denied it all under oath, this Court would have found his testimony credible.

Additionally, had this Court not found Petitioner's testimony credible, he likely would have faced an additional enhancement for obstruction of justice, further supporting the Government's position in this case that he cannot show a reasonable probability that he would have received a lower sentence, even if trial counsel had presented his testimony in support of his objection to the firearm enhancement. Finally, in light of the possibility that Petitioner would have faced a higher sentence had this Court not believed the testimony he asserts he would have offered, trial counsel's failure to offer that testimony was not deficient representation.

Turning to Petitioner's claim that appellate counsel should have argued ineffective

9

assistance of counsel on direct appeal, it is well established that a defendant's Sixth Amendment challenge to the effectiveness of his trial counsel is generally not cognizable on direct appeal, but rather, is appropriately asserted in a post-conviction motion to vacate under 28 U.S.C. § 2255, unless it conclusively appears from the record that counsel did not provide effective representation. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010). Here, for the reasons set forth above, Petitioner has not shown that his trial counsel provided deficient representation or that there is a reasonable probability that Petitioner would have received a lower sentence if counsel had insisted on an evidentiary showing or offered Petitioner's testimony. Because the record does not establish ineffective assistance of counsel, any argument on appeal that counsel had been ineffective would have failed.

In sum, Petitioner's ineffective assistance of counsel claim will be dismissed.

### IV. CONCLUSION

For the reasons stated herein, Petitioner's § 2255 is dismissed.

**IT IS THEREFORE ORDERED THAT**:

1. Petitioner's § 2255 motion, (Doc. No. 1), is dismissed with prejudice.

2. Respondent's Motion to Dismiss, (Doc. No. 8), is **GRANTED**.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must

establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: July 29, 2013

Richard L. Voorhees
United States District Judge